\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| | * | |
| MARY E. PETERSEN, | * | CIV. 07-4114 |
| | * | |
| Petitioner, | * | REPORT and RECOMMENDATION |
| | * | (Petitioner's § 2254 Application) |
| -vs- | * | |
| | * | |
| DWAYNE RUSSELL, Warden, | * | |
| South Dakota Women's Prison, | * | |
| | * | |
| Respondent. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Petitioner, Mary E. Petersen, an inmate at the South Dakota Women's Prison, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In addition to the § 2254 Application, currently pending are: Petitioner's Motions for Release on Bond (Docs. 50 & 59); Petitioner's Motion for Subpoenas and Transcripts (Doc. 51) and Petitioner's Ex Parte Motion (Doc. 61).

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Order dated August 22, 2007.

## FACTUAL BACKGROUND[1]

Petitioner was hired as the office manager for Central Heating and Air, Inc., in Sioux Falls, South Dakota, on November 4, 2002. In that position, she performed bookkeeping duties and had access to the accounting software. Four days after she was hired, she wrote herself a check in the amount of $2,379.52, indicating it was a "sign-on bonus." She cashed the check/deposited it into her own bank account. She did not have authority to write herself a "sign-on bonus." Petitioner remained employed at Central Heating and Air, Inc. as the office manager for a little over two years. She regularly wrote herself several non-payroll checks nearly every month during her employment. She apparently slipped the checks into the pile of other checks to be signed by the owner, and he signed them without looking at them or noticing that they were improper. The amounts of the

---

[1]The factual background is gleaned from the state files and transcripts which have been provided to the Court.

checks varied from a low of $1,867.31 to a high of $4,798.32. During this time frame, Plaintiff also charged personal items to Central Heating and Air, Inc.'s credit card. Petitioner charged approximately $88,000.00 worth of items to the company credit card, including a $1,500.00 drill, $5,000.00 worth of concrete work at her home, $7,000.00 for new tires on her truck, and $28,000.00 worth of computer equipment. When the company credit cards exceeded their limits, the company owners were notified and Petitioner's embezzlement finally came to light. One of the owners called Petitioner at home and confronted her about her embezzlement. He tape recorded the call. At first Petitioner denied everything, but eventually admitted she had stolen about $15,000.00. She offered to repay the money and asked the owner not to inform law enforcement or her husband. At that time the owner did not realize the full extent of the loss. He did not agree to forego prosecution. In total, Petitioner embezzled $579,818.74 from Central Heating and Air, Inc. during her two year stint as its office manager.

## PROCEDURAL HISTORY

On December 15, 2004, a Minnehaha County grand jury indicted Petitioner on one count of Grand Theft in violation of SDCL §§22-30A-10 and 22-30A-17. The conduct dates alleged in that indictment (CR 04-6671) were April 1, 2003 through November 30, 2004. *(State v. Petersen, Minnehaha County, South Dakota, Second Judicial Circuit, CR 04-6671).* On June 22, 2005, a Minnehaha County grand jury indicted Petitioner on eleven additional counts of Grand Theft in violation of SDCL §§22-30A-10 and 22-30A-17. Each Count in the second indictment alleged a different conduct date. The conduct dates alleged in that indictment (CR 05-3730) were November 11, 2002 (Count 1) through March 30, 2003 (Count 11). (*State v. Petersen, Minnehaha County, South Dakota, Second Judicial Circuit, CR 05-3730).*

On September 9, 2005, Petitioner entered guilty pleas to the lone count in CR 04-6671 and to two of the eleven counts in CR 05-3730. The state dismissed the remaining counts in the CR 05-3730 indictment. The following is a partial rendition of the discussion which occurred during the plea hearing on September 9, 2005:

COURT:              For the record, what is your understanding of what the plea agreement is?

| | |
|---|---|
| COUNSEL: | She's going to plead to three counts of grand theft, the count in 04-4471 and Counts 1 and 2 of 05-3730. They are open pleas. Right now the court is open to consecutive sentencing with the parties. If I were to argue or come and say concurrent, I can do that. We would have a hearing on that prior to sentencing. For now, we are entering with the possibility of consecutive pleas. There will be restitution between $500,000 and $600,000 to be determined by the state and by me and we will meet to resolve that number before I present a contest regarding that. And the remaining counts will be dismissed. |
| COURT: | Is that the state's understanding? |
| PROSECUTOR: | It is. |
| COURT: | Ms. Petersen, is that your understanding of the agreement? |
| PETITIONER: | Yes, your Honor. |
| COURT: | I am going to go through, as I normally do with a defendant when there's going to be a guilty plea, and cover a number of things with you. First off, I want to explore with you the possibilities that I see that could happen to you as far as the sentence is concerned. And then I am going to talk to you about your constitutional rights, the effect of the guilty plea on those rights, and I want to make sure that you understand all of that. If you plead guilty to grand theft, grand theft is a Class 4 felony carrying up to 10 years in the penitentiary and a $10,000 fine. So if you plead guilty to three counts, that potentially means 30 years in the State Penitentiary and a $30,000 fine. Do you understand all of that? |
| PETITIONER: | Yes, your Honor. |
| COURT: | Most of the time I don't worry about a fine. Especially if I were to impose some time in the penitentiary, I don't impose a fine. I have on rare occasions done that. So that is always a possibility. But your lawyer could probably tell you that in this type of case we probably would be more concerned with restitution than we would be with trying to collect a fine. Do you understand all of that? |
| PETITIONER: | Yes. |
| COURT: | I could impose court costs, $63, as set by statute. For costs if you have a court-appointed attorney–are you court appointed? |
| COUNSEL: | I am not. I am retained. |
| PROSECUTOR: | She originally had a court-appointed attorney. |

| | |
|---|---|
| COURT: | I might order you to repay the county for the cost of providing you with that court appointed attorney, but those are things I might do, I could do. It doesn't necessarily mean I would do them. Again, I would be more concerned about the restitution to the victims in this type of case. As I understand the plea agreement, the sentencing decision is up to me, although, the state's attorney can make recommendations, but it's my decision what the sentence ought to be. Is that the way you understand it? |
| PETITIONER: | Yes, your Honor. |
| COURT: | There's a number of charges that would be dismissed. So obviously there is a benefit to you from the dismissal of those charges, but I would interpret the terms of the plea bargain to mean that even though those other charges are being dismissed that you are in agreement that you would make restitution for those other charges and in fact, restitution for all of the loss in this case regardless of whether you are convicted on it or not. Is that the way you understand it? |
| PETITIONER: | Yes, your Honor. |
| COURT: | If you decide to plead guilty to these charges, you give up certain important Constitutional rights. You would have had those reviewed with you by other judges when you appeared in court for initial appearance on these charges. I am going to briefly go through some of those rights with you again right now. You have on both of these files a right to a jury trial here in Minnehaha County where 12 people from the county listen to the evidence and they decide whether you are guilty or not guilty of those charges. At that trial, the state's attorney has to try to prove that you are guilty and they try and do that by calling witnesses to testify here in the courtroom in front of the jury. You have the right to be there when those witnesses testify, to see them and hear them as they testify, and to cross-examine them about their testimony, to ask them questions about it, and your lawyer would do that for you, of course. You have the right to call your own witnesses into the courtroom to help you tell your side of the story. If there is somebody that you know of that is a witness in the case and you would like them to come into court to tell that story to the judge, you can have a subpoena issued for them. If you plead guilty, you give up most of those rights I have just talked about. There's not going to be a jury. There is no reason to have a jury decide whether you are guilty or not if you admit you are guilty. Do you understand that? |
| PETITIONER: | Yes. |
| COURT: | If you plead guilty, there won't be witnesses testifying against you. I will have the prosecutor summarize the facts in the case and summarize what the |

witnesses would have said, but the witnesses themselves won't be testifying at least as part of the trial or the determination of guilt. So you give up that right and the chance that you normally would have to have your lawyer cross-examine those witnesses about their version of what happened. Do you understand that?

PETITIONER:     Yes, your Honor.

COURT:          If you plead guilty, you don't necessarily give up your right to bring your own witnesses in. If you have witnesses that you want to have testify at a hearing on sentencing, you are given the chance to do that, but –so that's one of those rights that you don't give up by your plea of guilty. You have a right against self-incrimination, which normally means you can't be asked questions or called to the stand to testify at any hearing or trial, but if you plead guilty you give up that right. I can and will be asking you at least some questions about the facts of the case and you no longer have the right to refuse to answer those questions. You would have to answer them. Do you understand that?

PETITIONER:     Yes.

COURT:          Has anyone forced or threatened you or told you you had to plead guilty to this charge?

PETITIONER:     No, your Honor.

COURT:          Has anyone promised you anything other than what has been discussed here in open court today to get you to plead guilty?

PETITIONER:     No, your Honor.

(Court reads the indictment and Petitioner enters guilty pleas). Page 8, Plea TR.
(Prosecutor states factual basis for plea) Pages 9-11, Plea TR

COURT:          Ms. Petersen, do you agree with the statement of facts as Mr. Bengford set out here today?

PETITIONER:     Yes, your honor.

COURT:          The first check that was mentioned, which was indicated as a sign-on bonus, did you prepare that check?

PETITIONER:     Yes, your Honor, I did.

| | |
|---|---|
| COURT: | Did you sign the boss's name to it yourself or did you give it to him to sign when he was signing a bunch of other things? Do you remember? |
| PETITIONER: | It was signed through him. |
| COURT: | But you knew that you weren't entitled to that money? |
| PETITIONER: | Yes, your Honor. |
| COURT: | And you did that as a part of a scheme to get some extra money, is that true? |
| PETITIONER: | Yes, your Honor. |
| COURT: | And you deposited it into your bank account? |
| PETITIONER: | Yes, your honor. |
| COURT: | And the same thing with the check a month or so later for office equipment or whatever, furniture. That was also similarly obtained. You got a signature without him realizing what he was signing and deposited that? |
| PETITIONER: | Yes, your Honor. |
| COURT: | How about those other checks as part of the first charge here? Mr. Bengford's described large quantities. Were those all checks signed by the boss when he wasn't really paying attention or were those some of those checks that you prepared yourself? |
| PETITIONER: | They were all signed when he wasn't paying attention. |

\*\*\*

(At page 13)

| | |
|---|---|
| COURT: | The Court can find a factual basis. Has anyone forced you or threatened you or told you you had to plead guilty to these charges? |
| PETITIONER: | No, your Honor. |
| COURT: | Has anybody made any promises other than what we talked about here in court to get you to plead guilty? |
| PETITIONER: | No your Honor. |

| COURT: | You have talked this over with your lawyer and explored all of the different possible defenses you might have, and after talking it over and listening to his advice, you made the decision to yourself to enter into this plea bargain. Is that true? |
|---|---|
| PETITIONER: | Yes, your Honor. |
| COURT: | The court can find a voluntary and intelligent plea. . . . |

By the time Petitioner entered her pleas in the Minnehaha County cases, she had already entered guilty or nolo contendere pleas to charges which were pending in Davison and Hanson Counties.[2] The Davison County charges (*State v. Petersen, Davison County, South Dakota, First Judicial Circuit, CR 05-00014*) ultimately resulted in a six year prison sentence and restitution totaling $5,230.32.

Judge Joseph Neiles imposed sentence on November 2, 2005. As to CR 04-6671, Judge Neiles imposed a sentence of ten years imprisonment, consecutive to her sentence in Davison County (CR. 05-00014).[3] Restitution was also ordered to three victims in an amount exceeding $580,000.00.[4] As to CR 05-3730, Judge Neiles imposed a sentence of ten years imprisonment for Count 1 to run consecutive to CR 04-6671 and the Davison County sentence, and as to Count 2, he imposed a sentence of ten years imprisonment (suspended) subject to certain conditions including payment of restitution.[5] According to Judge Neiles' calculations, Petitioner would be eligible for parole after serving a total of nine years in prison on her combined sentences. *See* Sentencing TR at 37.

_____

[2]The Davison and Hanson County charges arose out of insufficient funds/ theft by deception charges.

[3]In the Davison County case, Petitioner entered a plea of nolo contendere to the charge of theft by deception and was sentenced on October 4, 2005, to six years imprisonment and over $5,000.00 in restitution to multiple victims.

[4]The restitution amount imposed was the aggregate amount owed for both Minnehaha County cases.

[5]The court recommended to the parole board the Petitioner make restitution payments as a condition of release on parole.

Petitioner did not directly appeal any of her convictions..  Petitioner filed a *pro se* state habeas corpus petition in the Second Judicial Circuit, Minnehaha County, South Dakota, (CIV. 06-1821) on May 25, 2006.  An amended petition was filed on her behalf by Cynthia Howard, Public Advocate, on December 21, 2006.   The grounds for relief alleged in the state habeas petition and amended petition are:

- Petitioner's right against double jeopardy as guaranteed by the Fifth Amendment to the United States Constitution and Art. VI, § 9 was violated by the trial court's determination that the thefts constituted multiple acts which could be separately punished;

- Petitioner was denied of due process of law and effective assistance of counsel as guaranteed by the Fifth and Sixth Amendments to the United States Constitution and Art. VI, §§ 2 and 7 of the South Dakota Constitution because her guilty plea was not voluntary.

An evidentiary hearing was held in state court on February 27, 2007, the Honorable Patricia Reipel presiding.  Petitioner and her trial counsel testified.  On April 13, 2007, Judge Reipel issued Findings of Fact and Conclusions of Law, along with a Judgement and Order dismissing Petitioner's writ in its entirety.  The state habeas action is therefore concluded in the Second Judicial Circuit, Minnehaha County, South Dakota, and the South Dakota Supreme Court denied Petitioner's Motion for Certificate of Probable Cause on July 16, 2007.  *See* Doc. 3-3, p.9.

Petitioner's pro se habeas application to this court consists of a form regularly used by state inmates for § 2254 filings.  In the section where Petitioner is instructed to describe the grounds upon which her claim is based, her stated claims for relief are:

- "due process clause - altered indictment, violation of 180 days and speedy trial act, 10 day not guilty plea, unlawfully done by prosecutors malicious harrassment (sic) of Defendant;

- "overstepping jurisdiction of sentence" [double jeopardy];

- "judicial misconduct and/or bias;" and

- "sentence enhancement" wherein Petitioner continues her double jeopardy argument.

# ANALYSIS

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." *Osborne v. Purkett,* 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent.*" Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.C. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.C. at 1495. "Rather, that application must also be *unreasonable*." Id. (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. *Thatsaphone v. Weber*, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.C. 843, 850, 74 L.Ed.2d 646 (1983).

Finally, the Eighth Circuit has noted federal review of ineffective assistance claims in § 2254 petitions is particularly deferential: "Our review under 28 U.S.C. § 2254 of a state court's application of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.C. 2052, 80 L.Ed.2d 674 (1984) is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005) *cert. den.* 126 S.Ct. 2037, 164 L.Ed.2d 794 (2006).

As a general rule, a petitioner seeking a writ of habeas corpus under § 2254 must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A). The doctrine of exhaustion requires "as a matter of comity, federal courts should not consider a claim in habeas corpus petition until after the state courts have had an opportunity to act." *Mellott v. Purkett*, 63 F.3d 781, 784 (8th Cir. 1995) *quoting, Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982). "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992). A strong presumption exists to require a prisoner to exhaust his state remedies, and the exhaustion requirement is waived "only in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Mellott*, 63 F.3d at 785.

The Petitioner bears the burden to show all available state remedies have been exhausted, or that exceptional circumstances exist which warrant waiver of exhaustion. *Carmichael v. White,* 163 F.3d 1044, 1045 (8th Cir. 1998). The federal courts' review of state courts decisions is limited in another way: "the law of this circuit requires that an applicant for a writ of habeas corpus refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue in state court" before it will evaluate a claim. *Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) (citations omitted, punctuation altered). A petitioner's failure to exhaust in the state courts a claim which does not state a federal constitutional claim, cognizable in federal habeas proceedings, does "not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal constitution." *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir. 1986) (citations omitted). *See also, Hall v. Iowa*, 705 F.2d 283, 286 (8th Cir. 1983) ("Nonexhausted state claims included in a federal habeas petition and having no constitutional relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution.").

A federal court may not adjudicate the merits of a habeas petition which contains both exhausted and unexhausted claims (a "mixed" petition). *Rose v. Lundy*, 455 U.S. 509, 515, 102

S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982).  The ADEPA one year statute of limitations, however, often results in claims which are time-barred after being dismissed without prejudice in federal court for failure to exhaust.  A "stay and abeyance" procedure may be  appropriate if a petitioner presents a petition "mixed" with exhausted and unexhausted claims.  *Rhines v. Weber*, 125 S.C. 1528, 1535 (2005).  No stay and abeyance is necessary, however, necessary  if the unexhausted claims are "plainly meritless."  *Id.;* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

When a federal habeas petition raises a claim that has not been exhausted in state proceedings, the district court ordinarily must either dismiss the petition, 'leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only the exhausted claims to the district court . . . or grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim, *see Rhines v. Weber*, 544 U.S. 269, 277-79, 125 S.Ct. 1528, 1535-36, 161 L.Ed.2d 440 (2005).  When it is obvious the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, the district court can forego the needless 'judicial ping-pong' and just treat those claims as now barred by state law as no basis for federal habeas relief.  The unexhausted claims should be treated as if procedurally defaulted.  A petition is due to be denied with prejudice if there are no state remedies left to exhaust and all of the claims are either meritless or procedurally defaulted.  *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (internal citations omitted).  South Dakota law provides that a habeas petitioner must raise all potential grounds for habeas relief in her first state habeas petition.  SDCL § 21-27-16.1 provides:

> **21-27-16.1 Waiver of grounds for relief not raised in application.**
> All grounds for relief available to petitioner under this chapter shall be raised in his original, supplemental or amended application.  Any ground not raised, finally adjudicated or knowingly and understandingly waived in the proceedings resulting in his conviction or sentence or in any other proceeding that the applicant has taken to secure relief from his conviction, or sentence, may not be the basis for a subsequent application, unless the court finds ground for relief asserted which for reasonable cause were omitted or inadequately raised in the original, supplemental or amended application.

The United States Supreme Court has explained that the federal courts should not review a question of federal law decided by a state court if the decision of that court rests on state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id.*, 501 U.S. at 729, 111 S.Ct. At 2554.

> We have applied the independent and adequate state ground doctrine not only in our review of state court judgments, but in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions. The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds.

*Id.*, 501 U.S. at 729-30, 111 S.Ct. at 2552. The Court also explained the relationship between the requirement for exhaustion of state remedies pursuant to 28 U.S.C. § 2254(b) and state procedural default:

> When the independent and adequate state ground supporting a habeas petitioner's custody is state procedural default, an additional concern comes into play. This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights. . . The exhaustion principle is designed to protect the state courts' role in the enforcement of federal law and prevent the disruption of state judicial proceedings. . . . federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the matter, have had an opportunity to pass on the matter.

> These same concerns apply to federal claims that have been procedurally defaulted in state court. Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the state's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him. In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Coleman*, 501 U.S. at 731-32, 111 S.Ct. at 2555.

As noted by the Respondent, Judge Reipel pointed out in her Findings of Fact and Conclusions of Law that Petitioner "failed to preserve" certain claims, but she discussed their merits nevertheless. For the reasons explained below, the claims which Petitioner arguably failed to exhaust at the state level are, as Judge Reipel noted, either procedurally barred or "plainly meritless." For that reason it will be recommended to the District Court that Petitioner's § 2254 application be dismissed in its entirety, on the merits.

1.      **The *Tollett* Doctrine**

In *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), the United States Supreme Court greatly limited the grounds upon which a state prisoner may seek habeas relief after entering a voluntary and intelligent guilty plea.

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable standards].

*Id.*, 411 U.S. at 267, 93 S.Ct. at 1608. After *Tollett*, the Supreme Court has carved out only limited exceptions to this principle. *See United States v. Vaughn*, 13 F.3d 1186, 1188 (8th Cir. 1994), "[W]e have frequently stated the general rule to be that a valid guilty plea operates as a waiver of all non-jurisdictional defects or errors."

The factual findings of the state habeas court regarding the knowing and voluntary nature of a guilty plea are generally accorded the presumption of correctness described above. In this instance, Petitioner asserted at the state level that her counsel was ineffective in advising her regarding her guilty plea, thus rendering the plea un-knowing and involuntary. Because this claim has been exhausted at the State level, and because the resolution of this claim adverse to Petitioner forecloses virtually all other claims, it will be addressed first.

**A.        Knowing and Voluntary Plea**

Judge Reipel specifically addressed whether Petitioner's guilty plea was knowing and voluntary.  *See*  Findings of Fact and Conclusions of Law dated April 13, 2007.  "To withstand a constitutional challenge a guilty plea must represent a voluntary and intelligent choice among  the alternative choices of action open to the defendant."  *Rouse v. Foster*, 672 F.2d 649, 651 (8th Cir. 1982) (citations omitted).  Judge Reipel  made the following findings:

- •  Petitioner's counsel testified he had numerous meetings with Petitioner (Finding of Fact No. 18).[6]

- •  Petitioner's counsel reviewed substantial documentation with Petitioner in assessing the case (Finding of Fact No. 19).

- •  Petitioner's counsel recommended that Petitioner accept the plea agreement because in his opinion Petitioner did not have a viable defense and counsel believed Petitioner's best chance was to accept responsibility for three of the numerous thefts she committed (Finding of Fact No. 20).[7]

- •  Petitioner's counsel did not force Petitioner to enter guilty pleas but he did recommend that she enter guilty pleas (Finding of Fact No. 21).

- •  The claims made by Petitioner during the state habeas evidentiary hearing which were contrary to her testimony at the plea hearing (i.e. that she never committed any thefts[8] and that she was actually entitled to the $579,818.74 that she stole from Central Heating & Air, Inc. were not credible (Findings  of Fact No. 22 & 24).

------

[6]Theophilus stated he had "extensive" discussions with Petitioner and the evidence.  Habeas TR at 53.

[7]Theophilus testified that he told Petitioner he did not think her "bonus check" story was credible and he didn't think a jury would believe it either.   Habeas TR at 57-58.  That was good advice.

[8]During the habeas hearing , Petitioner claimed she did not write any checks to herself that were not authorized and did not steal any money from Central Heating and Air.  Habeas TR at 17. She claimed that when she was hired, the owners authorized the "bonus checks" and that they were actually "profit sharing" proceeds.  Habeas TR at 18.  She also explained that the owners instructed her to use the company credit cards for personal use so they could  earn more frequent flyer miles. *Id.* She claimed she paid them back in cash (from her "bonus checks") for the items she charged on the credit cards.

14

- Theophilus testified he went over the consequences of both entering a plea and going to trial, including the fact that they did not have a defense at trial. Petitioner knew they would not be able to challenge the facts, and having weighed both options, Petitioner intelligently and voluntarily made the decision to enter a guilty plea. (Conclusion of Law No. 23).

- At the plea hearing, the trial court advised Petitioner of the charges she was pleading guilty to and the maximum penalty she could receive by entering a guilty plea. . . .Petersen ultimately received twenty years in the South Dakota State Penitentiary consecutive to the six years she received in Davison County. However, pursuant to the plea agreement Petersen was facing thirty years consecutive to the Davison County sentence. (Conclusion of Law No. 29) *See also,* Conclusions of Law Nos. 29 and 30 regarding the trial court's advisement of Petitioner's other *Boykin* rights.

- Petitioner has failed to show her guilty pleas were not made voluntarily, without the understanding of the nature of the charges and the consequences of the pleas and has failed to show defense counsel forced her to plead guilty against her will, that his actions fell below an objective standard of reasonableness, or that she was prejudiced by defense counsel's advice to enter pleas of guilty and this claim is dismissed. (Conclusion of Law No. 32).

Judge Reipel's findings find fair support in the record. The second half of the inquiry, however, is whether Petitioner's trial counsel was competent in advising her to enter into the plea agreement. "A decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside the range of competence demanded of attorneys in criminal cases. Therefore justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself–the very product of the alleged ineffectiveness." *DeRoo v. United States*, 223 F.3d 919, 924-25 (8th Cir. 2000).

### B. Ineffective Assistance of Counsel as to the Plea

A defendant faces a "heavy burden" to establish ineffective assistance of counsel in a habeas corpus action. *Id.* To sustain an ineffective assistance of counsel claim, Petitioner must show his counsel's representation was deficient and that the deficient performance prejudiced his case. *Id.; Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, the Petitioner must show the results of the proceeding would have been different. *DeRoo,*

223 F.3d at 925. If there is no reasonable probability the defenses or arguments the Petitioner asserts should have been made by counsel would have been successful, he cannot prove prejudice. *Id. Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "A habeas petitioner's conclusory allegation that but for an alleged attorney act or omission he . . . would not have pleaded guilty, is therefore insufficient to prove such a claim." *Shanks v. Wolfenbarger*, 387 F.Supp.2d 740, 750 (E.D. Mich. 2005).

Judge Reipel further found Petitioner's counsel acted in a reasonably competent manner in advising Petitioner to accept the plea and there was no likelihood of a different result had Petitioner gone to trial. Petitioner therefore failed to prove she was prejudiced by following her counsel's advice to enter a guilty plea.

Judge Reipel's conclusions are supported by the record. There is no reasonable probability that the legal theories advanced by Petitioner would have been affected the outcome of her criminal proceeding. Judge Reipel's conclusions did not result in a decision that was contrary to, nor did it involve an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1).

### 2.    Remaining Claims

Because Petitioner entered a knowing and voluntary guilty plea which was not tainted by ineffective assistance of counsel during the plea process, Petitioner's remaining § 2254 claims must be viewed through the strict confines of *Tollett* and its progeny. "To the extent that the petitioner challenges his trial counsel's advice, he may only present claims relating to he plea advice; claims relating to pre-plea advice are barred." *Whitepipe v. Weber*, 536 F.Supp.2d 1070, 1082 (2007). A defendant who pleads guilty may seek to set aside a conviction based on prior constitutional claims which challenge "the very power of the state to bring the defendant into court to answer the charge against him." *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974). Stated another way, "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction be set aside even if the

conviction was entered pursuant to a plea of guilty." *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975). Petitioner's § 2254 claims are now reviewed through this narrow lense:

### A. Petitioner's First Claim For Relief: Due Process Clause-Violation of the Speedy Trial Act

This claim is should be dismissed for two reasons: it is procedurally barred and Petitioner waived it when she entered her knowing and voluntary guilty plea. These reasons are discussed in turn below.

Petitioner did not raise this issue in her *pro se* state habeas petition or her amended state habeas petition. She did raise it, however, during the evidentiary hearing and Judge Reipel addressed it in her written Findings of Fact and Conclusions of Law. Judge Reipel found that Petitioner failed to preserve the issue, and that if it had been properly preserved, it was meritless. *See*, Conclusion of Law Nos. 33-34. This issue, therefore, is procedurally barred pursuant to state law. *See* SDCL § 21-27-16.1. Because Judge Reipel specifically found the issue to be procedurally barred, an "adequate and independent finding of procedural default" bars federal habeas review of the claim. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). " A petition is due to be denied with prejudice if there are no state remedies left to exhaust and all of the claims are either meritless or procedurally exhausted." *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007).

Petitioner's speedy trial act claim is likewise barred by the *Tollett* doctrine. "A voluntary plea of guilty constitutes a waiver of all non-jurisdictional defects and the right to a speedy trial is non-jurisdictional in nature." *Cox v. Lockhart*, 970 F.2d 448, 453 (8th Cir. 1992) (citations omitted, punctuation altered). For these reasons, Petitioner's first claim for relief may be dismissed with prejudice.

**B.** **Petitioner's Second Claim For Relief: Overstepping Jurisdiction of Sentence (Double Jeopardy)**

In CR 04-6671, Petitioner was charged with one count of Grand Theft in violation of SDCL § 22-30A-10 and 22-30A-17. In CR 05-3730, Petitioner was charged with eleven counts of Grand Theft in violation of the same two statutes. SDCL § 22-30A-10 states:

**22-30A-10 Embezzlement of property received in trust**

Any person who, who has been entrusted with the property of another and who, with intent to defraud, appropriates such property to a use or purpose not in the due and lawful execution of his or her trust, is guilty of theft. A distinct act of taking is not necessary to constitute theft pursuant to this section.

SDCL§ 22-30A-17 states:

**22-30A-17 Grand Theft-Felony**

Theft is grand theft, if the property stolen:
(1) Exceeds one thousand dollars in value;
(2) Is a firearm;
(3) Is taken from the person of another; or
(4) The property stolen is cattle, horses, mules, buffalo, or captive domestic elk.
Grand Theft is a Class 4 felony.

Petitioner asserts South Dakota law prohibits multiple incidents of from theft being charged as more than one offense. She claims that by charging each incident of theft as a separate count in the indictment(s) the State violated her Fifth Amendment right against double jeopardy. This claim was addressed on the merits at the state level. Judge Reipel held that Petitioner's right against double jeopardy was not violated. This claim should be dismissed for two reasons. First, Judge Reipel's decision is not contrary to, nor does it involve an unreasonable application of, clearly established federal law. Second, under the *Tollett* doctrine, Petitioner's collateral attack upon her conviction based upon a double jeopardy claim is foreclosed by her knowing and voluntary guilty plea. *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927.

Judge Reipel applied the "impulse" test which originated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932) to determine that each instance of Petitioner's

embezzlement was a separate transaction rather than one continuous offense. Each, therefore, was subject to a separate punishment. *See,* Conclusions of Law Nos. 9-13.

Petitioner asserts that because the thefts arose from the same set of circumstances and involved the same victim they should be considered one continuous offense rather than separate offenses. That the charged offenses arise from the same circumstances and are predicated on the same transactional theme, however, is not the test to determine the implications of double jeopardy. *United States v. Gardner*, 65 F.3d 82, 85 (8th Cir. 1995). Instead, the inquiry is whether they constitute the "same offense" or require different factual predicates to conviction. *Id.*, *citing Blockburger* at 284 U.S. at 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932). "If the individual acts are the target of the law, then separate indictments and prosecutions are permissible, even if the acts together constitute a common course of action." *Id.* In *Gardner*, each separate instance of mailing in furtherance of the alleged fraud was separately prosecutable. The charges were not the "same offense" because each charge of mail fraud required proof of an additional fact which the other did not–namely the use of the mails specified for each particular count.

Petitioner alleges that she is charged with the same crime in multiple counts. "The main difficulty with such an indictment is that the jury can convict the defendant on both counts, subjecting the defendant to two punishments for the same crime in violation of the double jeopardy clause of the fifth amendment." *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005). When the same statutory violation is charged twice, the question is whether the legislative body intended the facts underlying each count to make up a separate unit of prosecution. *Id.* Petitioner cites SDCL §22-30A-15 in support of her theory that each incident of embezzlement should be considered a single offense for double jeopardy purposes. That statute states:

**22-30A-15.    Theft as single offense incorporating previous separate offenses–Terms used in alleging theft**
Conduct constituting theft pursuant to this chapter constitutes a single offense including any separate offenses committed or charged before the effective date of this chapter and known as larceny, embezzlement, extortion, fraudulent conversion, false pretense, and receiving stolen property. An accusation of theft may be supported by

evidence that the theft was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the indictment or information, subject only to the power of a court to ensure a fair trial by granting a continuance or other appropriate relief if the conduct of the defense would be prejudiced by lack of fair notice or surprise.

This statute was first enacted in 1976. *See*, Source: SL 1976, Ch. 158, § 30A-2. That same year, the criminal statutes which defined the separate criminal offenses of extortion, larceny, misappropriation of property, embezzlement, fraud and misrepresentation were repealed. *See, e..g.* the former SDCL § Ch. 22-31, 22-37, 22-38, and 22-41. The statute upon which Petitioner relies, therefore, consolidated into a "single offense" the definitions of theft, extortion, larceny, misappropriation, embezzlement and fraud. Neither the language of the statute nor the legislative history support Petitioner's theory that the facts underlying multiple violations of the statute should make up a single unit of prosecution. *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005) (when the same statutory violation is charged twice the question is whether the legislative body intended the facts underlying each count to make up a separate unit of prosecution). The statutes with which Petitioner was charged were SDCL §§ 22-30A-10 and 22-30A-17. A fair reading of those statutes indicates that each incident of appropriation of $1,000 or more may be charged as a separate count of Grand Theft. Judge Reipel's denial of Petitioner's double jeopardy claim is not contrary to, nor does it involve an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005).

Petitioner's double jeopardy claim is likewise barred by her knowing and voluntary guilty plea. Each indictment contained separate counts alleging distinct dates upon which Petitioner misappropriated money from her employer in violation of the South Dakota Grand Theft statutes. She entered guilty pleas to three of the counts and the remaining counts were dismissed. "Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *United States v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 763, 102 L.Ed.2d 927 (1989). Pursuant to *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), therefore, Petitioner's Second Claim For Relief is likewise barred and should be dismissed with prejudice.

**C.     Petitioner's Third Claim for Relief: Judicial Misconduct and/or Bias**

This claim for relief asserts that Judge Neiles acted improperly by imposing a $50,000 cash bond upon Petitioner after she was indicted in CR 05-3730.  Petitioner also asserts Judge Neiles attempted to "bribe" her after sentencing by indicating that he might change her sentences to run concurrently rather than consecutively if she gave him (personally) some money.  This claim was not raised in Petitioner's state habeas petition or amended petition, but it was raised during the evidentiary hearing and addressed in Judge Reipel's written Findings of Fact and Conclusions of Law.  *See* Findings of Fact Nos. 26-27, Conclusions of Law Nos. 35-36.  Judge Reipel found that these claims were (1) not properly preserved and (2) "preposterous" and "completely frivolous and without any merit."  Because Petitioner's Third Claim for Relief is procedurally barred and plainly meritless, it should be dismissed with prejudice.

Petitioner's Third Claim for Relief is procedurally barred for the same reason as is her first claim for relief.  Judge Reipel specifically found that Petitioner failed to adequately preserve the issue.  The provisions of SDCL § 21-27-16.1 therefore apply.  Because Judge Reipel specifically found the issue to be procedurally barred, an "adequate and independent finding of procedural default" bars federal habeas review of the claim.  *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).   " A petition is due to be denied with prejudice if there are no state remedies left to exhaust and all of the claims are either meritless or procedurally exhausted."  *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007).

The assertions in Petitioner's Third Claim for Relief are also "plainly meritless."  Petitioner's claims regarding pretrial bond have no bearing on whether she is currently held in custody in violation of the Constitution or laws or treaties of the United States.  Constitutional claims regarding pretrial bail become moot upon conviction.  *Murphy v. Hunt*, 455 U.S. 478, 481-82, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982).  Judge Reipel also found that Petitioner's assertion that Judge Neiles attempted to bribe her was "preposterous."  Specifically, Petitioner claims Judge Neiles offered to shorten her sentence if Petitioner would "get him some money."  She asserts that he offered to change her sentences to run concurrently rather than consecutively and she claims this offer occurred as she

was leaving the courtroom. The following excerpt from Petitioner's sentencing hearing is enlightening: *See* Sentencing TR at p. 27:

COURT: What money do you have available today available to pay to the victims in this case?

PETITIONER: Money available today?

COURT: Right.

PETITIONER: Probably 10,000 dollars.

COURT: Where is it at?

PETITIONER: Where is it at?

COURT: Right.

PETITIONER: With my husband.

COURT: Well, certainly restitution is something if . . . the defendant does come forward with the restitution at the time of sentencing, that's a fact that I could consider in deciding to impose a lesser sentence.

PETITIONER: I guess, Your Honor, I didn't realize that or I would have tried to do something like that sooner.

*****
(Continued at p. 29)

COURT: Well, Miss Petersen, I think there's value to talk about this a little bit so that you can understand why I do what I do. There's a number of reasons why a judge comes to the conclusion in the case as to what the appropriate sentence is. Rehabilitation, if I can do something that will help to rehabilitate you, that is certainly something that I would consider. Sometimes I impose a sentence to deter others from committing the similar type of crime. And usually deterrence implies that somebody's going to have to get locked up or get fined an awful lot of money, because simply putting them on probation isn't much of a deterrence. It's not sending much of a message. Sometimes the sentence that the judge imposes is in a sense retribution or revenge for the victims in the case to try to in some fashion structure a sentence that will compensate the victims or make them feel better about what happened in the case. Obviously, there's deterrence to others, there deterrence to you to keep you from committing a similar offense in the future and that can be done both with

locking somebody up and also sometimes with putting them on probation and imposing conditions on them that will assist in restricting their activities. So that they don't commit a similar offense in the future. When I considered all this and the characteristics, this isn't the biggest theft case, unfortunately, that I have ever had to deal with. I have had one where probably twice this amount was stolen, but they're serious cases and there's another factor which I think is important for the Court to consider and that is the effect on the victims. In some cases and in other cases, it was more serious than this although the harm there was greater to the victim. It was individual victims that had each a fairly small amount of money taken, but there were a lot of victims. Here we have a few victims, but we have a huge amount of money and we have not only the victims of your former employer, but we also have their employees and the ability of the employer in the future to continue to operate their business, to give pay raises to their employees and any other things that they might do for side benefits in the job. There's all kinds of things that have been threatened by the conduct in this case. I don't frankly know that I'm convinced here that you have truly understood the seriousness of the crime that you have committed. Certainly your conduct after getting out on bond in this case suggests to me, and the fact that you were later convicted in another county, suggests to me that you at that time had a very poor attitude and you are not really a candidate for any kind of probation from my view. I realize that the chances of restitution here are not good. I'm going to try and structure a sentence that will at least perhaps in the future allow some restitution to the victims, although they should not count on it. I'm going to try and structure a sentence that's going to offer the possibility for maybe a more substantial restitution, if you choose to go that route, but you are going to have to make a decision yourself on that, and I guess I'm going to let you and your family, and I encourage you to do that. On criminal file 04-6671, and that's the file which contained the one count of grand theft, and is my recollection correct, Mr. Bengford, that included the greatest dollar amount in terms of the loss here?

PROSECUTOR: That is correct.

COURT: Ten years in the South Dakota State Penitentiary. In file 05-3730, on count one, you pled guilty to both counts one and count two, according to my notes, I'm going to impose ten years in the South Dakota State Penitentiary on count one, and ten years in the South Dakota State Penitentiary in count two. I have given some thought to the recommendations that the prosecutor has made here and I'm going to agree with him that there's value in this case to suspending a portion of the sentence. So I'm going to suspend the second ten years to count two on some conditions. I'm going to order that these sentences be consecutive to each other and consecutive to the sentence you've received in Davison County. I'll set forth the conditions here in just a moment. But I'm also going to tell you, Miss Petersen, that if through the resolution of your

divorce and your family and whatever you can come up with a substantial restitution and that restitution is in fact paid, that at that point I can go back and modify this sentence to consider cutting a portion of it or restructuring it in any way that will make it a lesser sentence upon you. But I'm really frankly surprised that you didn't come forward with some money here even if it was a thousand dollars or two thousand dollars. And that fact that you've come forward with nothing, is not a good sign. I make no assurances to you or promises to you that I will do anything when I could have done several things. I could make the sentences run concurrent with the Davison County sentence which would shorten your sentence substantially. I could make these individual counts concurrent or I could make or suspend a portion of them. It really depends upon the dollar amounts that are forthcoming as far as restitution is concerned, and I could have chose to say, well, that is good but that's not good enough and do nothing. The terms of the suspended sentence here are , number one, that you make restitution. The restitution amounts as earlier stated by Mr. Bengford, $579,818.74 to Central Heating and Air. I believe to the Sheraton for $379.24; Shopko for $419.85. Although the attorney fees to the taxpayer of Minnehaha County are substantial, this is a case where frankly if we can collect anything, I would like to see that money go to the victims in this case. So I am not going to order the attorney fees recovered in this case. Realistically, we're not going to do that. So there's no sense in trying and I waive the court costs. Obviously, the second condition of the suspended sentence is that you be under the jurisdiction of the South Dakota Board of Pardons and Paroles after you get out and parole for an additional ten years for a probationary term with the conditions that you continue to make restitution. I think that the amount of restitution that you pay should never be less than $100.00 per month, and I think that depending upon the job you could get, it could be a lot more than that. But I do expect that you will be making some substantial payments during that entire time. If you are on probation for ten years and never got out of parole because of your behavior, but did get out on probation, a hundred dollars a month for 12 months is $1,200.00 and for 10 years is $12,000.00. Not a very large amount and so I am realistic here that the total dollar amount is never going to be approached and don't expect it to be. There will be other conditions that the parole board would like to apply to you and whatever conditions that they think are appropriate, given your status at the time of your release, then you are going to have to follow those conditions and good behavior, obey the laws, whatever those conditions might be. The crime here, Miss Petersen, although not a crime of violence, was enormous and a serious sentence was called for. I wish that I could offer better hope for the victims in this case, but I'm afraid that the chances of them getting much are pretty slim.

\*\*\*

This excerpt clearly demonstrates Judge Neiles did offer the possibility of amending the judgment of conviction to reflect concurrent rather than consecutive sentences if Petitioner was forthcoming with some amount of restitution for the victims. During the state habeas evidentiary hearing, however, Petitioner asserted that Judge Neiles made an additional off-the-record offer which involved not restitution to the victims, but payment directly to him. *See,* Habeas TR at 50-51.

Judge Reipel labeled this this claim "preposterous" and found Petitioner had a "complete lack of credibility." "Credibility determinations are left for the state courts to decide; [federal courts] are not permitted to substitute [their] judgment as to the credibility of witnesses for that of the state court." *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. 1984) *quoting, Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 2262, 76 L.Ed.2d 794 (1983) and *Marshall v. Loneberger*, 459 U.S. 422, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983). Judge Reipel found Petitioner's claims preposterous and completely incredible, therefore, this Court likewise finds they are "plainly meritless" and should be dismissed with prejudice.

### D. Petitioner's Fourth Claim for Relief: Sentence Enhancement

This claim is somewhat hard to follow, but it appears to be (1) a re-hashing of Petitioner's double jeopardy argument (i.e. that she should only have been subject to prosecution and sentencing for one count of grand theft) and; (2) that Judge Neiles violated her Fifth Amendment Due Process rights when he imposed restitution as a part of her judgment of conviction without conducting a restitution hearing. The merits of Petitioner's double jeopardy claim have already been discussed in Section B above and will not be repeated here.

The Due Process argument was not raised in Petitioner's state habeas proceedings but it may be dismissed nonetheless because it is "plainly meritless." Respondent asserts that restitution orders may never be challenged through a § 2254 application because "the touchstone of a habeas claim under § 2254 has . . . been its effect on the legality or duration of a petitioner's confinement . . ." *See*, Respondent's Memorandum, Doc. 34 at p.9, n. 3. Respondent asserts that because the restitution portion of the judgment does not affect Petitioner's confinement, she may not raise it in this § 2254 application. Respondent cites *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) in support

of its argument. *Bernard*, however, is a § 2255 case. The Courts are not in agreement about whether the same rationale applies in § 2254 cases. *See, e.g. Sorah v. Servitto* 2006 WL 3166553 (E.D. Mich) ("the parties disagree on whether a petitioner may challenge in a habeas petition the amount of restitution imposted by a state court. Both rely on cases brought under § 2255 . . .the court does not find these cases controlling in this § 2254 proceeding due to different statutory language involved and because in federal cases there are federal statutes which govern the imposition of fines and restitution, and these statutes do not apply to state courts. Courts have considered in state habeas cases questions involving monetary payments such as fines."). The *Sorah* court cited an Eighth Circuit case–*Girard v. Goins*, 575 F.2d 160 (8th Cir. 1978) a § 2254 case in which the Court held that the petitioner's Sixth Amendment right to a jury trial was violated when his was fined $10,000 without effectively waiving the right to a jury trial. Whether the *Bernard* rationale applies to § 2254 cases need not be decided here, because even if it does not, Petitioner's Due Process claim fails.

"As applied to criminal law, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed.2d 166 (1941). Reliance on "extensively and materially false" information which the Petitioner has no opportunity to correct, violates due process. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct.1252, 92 L.Ed.2d 1690 (1948). The petitioner cannot prevail on a due process claim, however, unless she can show: (1) the disputed information was materially false; (2) the court relied on the information; and (3) petitioner had no opportunity to rebut the information. *Waldon v. Phillips*, 2007 WL 431006 (E.D. Mich).

Petitioner cannot show that the restitution information was materially false or that she had no opportunity to rebut the information, because she acknowledged it and agreed to it in open court during the plea hearing. Judge Neiles advised Petitioner during the plea hearing (TR at 5) that pursuant to the plea agreement she would potentially be responsible to repay the *entire* amount of the loss –not just the amounts contained in the counts to which she was pleading guilty—as a result of her plea. Petitioner voiced her understanding and agreement. TR 5. Her attorney estimated the

amount of restitution in his opening statement to the Court to be between $500,000.00 and $600,000.00, and Petitioner voiced her understanding of that statement as well. TR at 2. The ultimate amount of restitution imposed was within that range. Petitioner spoke at the sentencing hearing after the exact amount of restitution ($579,818.74 to Central Heating and Air, plus $$379.24 to the Sheraton and $419.85 to Shopko for a total of $580,617.83) was discussed (TR 16) but before it was imposed, and she did not dispute that she owed restitution or the amount owed. Instead, she apologized for her acts and asked for a short sentence so she could return to her life with her children. Sentencing TR at 27.

Although this claim was not exhausted at the state level, Petitioner can make no showing Judge Neiles violated her Fifth Amendment Due Process rights by failing to hold a "restitution hearing." Petitioner's Fourth Claim for Relief should be dismissed with prejudice because it is plainly meritless.

## RECOMMENDATION

Petitioner's habeas corpus claims were adjudicated on the merits after an evidentiary hearing in state court where she was represented by court-appointed counsel. Petitioner has failed to satisfy her burden of rebutting the presumption of correctness of the state court's adjudication by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state court determination was not contrary to, nor did it involve an unreasonable application of clearly established federal law *(Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), and was a reasonable determination of the facts in light of the evidence presented in the state habeas proceeding. *See* 28 U.S.C. § 2254(d). Those claims which have not been exhausted at the state level may nevertheless be dismissed with prejudice because they are plainly meritless.

Petitioner has failed to make a "substantial showing of the denial of a constitutional right." A certificate of appealability should not be issued in Petitioner's case. 28 U.S.C. § 2253(c)(2). Although 28 U.S.C. § 2253(c)(2) has been found to be "only a modest standard," Petitioner has not shown that "the issues are debatable among jurists of reason; that a court could resolve the issues [in

a different manner]; or that the questions are adequate to deserve encouragement or to proceed further.'" *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (citations omitted).

Therefore, it is respectfully RECOMMENDED to the District Court that:

(1)     Petitioner's  Petitioner's Motions for Release on Bond (Docs. 50 & 59); Petitioner's Motion for Subpoenas and Transcripts (Doc. 51) and Petitioner's Ex Parte Motion (Doc. 61).  be DENIED;

(2)     A Certificate of Appealability should not be issued;

(3)     Petitioner's Application for Writ of Habeas Corpus (Doc. 1)  be DISMISSED with prejudice.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this 27th day of February, 2009.

BY THE COURT:

s/John E. Simko

_____

John E. Simko
United States Magistrate Judge